United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS SANTAMARIA HERNANDEZ,<br>Petitioner,<br>v.<br>MESA VEREDE ICE PROCESSING CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-06376 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

This habeas action concerns the detention of Petitioner Jesus Santamaria Hernandez, a noncitizen who has lived in the United States for at least four years. *See* Dkt. No. 7 at 4. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained for over six months without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. For the reasons explained below, the petition is GRANTED.

## I. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States in May 2022. *Id*. Prior to his detention, he lived with his wife and three children. *See* Dkt. No. 9-1 ¶¶ 1–2. His youngest child is a United States citizen. *See* Dkt. No. 1 at 24.

In May 2025, Petitioner was pulled over by local police and arrested for driving without a valid license. *See* Dkt. No. 7 at 8. He was subsequently transferred to ICE custody, who opened removal proceedings against him and briefly took him into custody. *See id*. at 13; Dkt. No. 8 at 4. He was released on bond by the immigration court. Dkt. No. 8 at 4–5. Petitioner was arrested again for driving without a license in February 2026, and he was transferred to ICE custody

United States District Court
Eastern District of California

shortly thereafter. Dkt. No. 7 at 4, 32. A warrant was issued for Petitioner's arrest and served a month later in March 2026. *Id.* at 11.

Petitioner alleges that between his arrest in February 2026 and the filing of his habeas petition, the Government refused to provide him with a custody redetermination hearing on the basis that his detention was mandatory under 8 U.S.C. § 1225(b)(2)(A). *See* Dkt. No. 1 at 6–8. However, in July 2026, the Ninth Circuit rejected the Government's reading of § 1225(b)(2)(A), holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226," which provides for a bond hearing. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026). Based on this authority, Petitioner's immigration counsel moved for a custody redetermination hearing. *See* Dkt. No. 7 at 29. Petitioner received that hearing while this habeas petition was pending. *See* Dkt. No. 8 at 4–6. At the hearing, the immigration judge denied Petitioner's release on bond, finding that Petitioner poses a danger to the community by "[o]perating a motor vehicle without a valid driver's license." *Id.* at 5.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). For the reasons that follow, Petitioner's arrest without any pre-deprivation notice, coupled with his six months of detention without a bond hearing, violated his right to due process.

### 1. Liberty Interest

"[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Here, immigration officials' release of Petitioner on bond in 2025 allowed him to live at liberty with his family while his removal proceedings progressed. It further reflected a finding by the Immigration Court that Petitioner was not such a threat to the community or flight risk that he needed to be detained during the pendency of his removal proceedings. Under these circumstances, Petitioner has a protected liberty interest in his release. *See, e.g.*, *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (finding protected liberty interest where immigration detainee was previously released on bond); *Vado C.G. v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-01858-TLN-CSK, 2026 WL 381556, at *3 (E.D. Cal. Feb. 11, 2026) (similar).

### 2. *Mathews* Factors

In determining what process is due commensurate with a noncitizens' liberty interest, many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value,

United States District Court
Eastern District of California

if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. First, Petitioner has a significant private interest in his continued release from custody. He was released by the Government and living at liberty prior to his re-detention. During that time, Petitioner lived with his wife and daughter, and was able to actively participate in his community.

Second, the risk of erroneous deprivation is high when, as here, Petitioner's release was revoked without any showing of changed circumstances at the time of his arrest by ICE. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). "While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). Where the Government "fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing" demonstrating changed circumstances since the individual's prior detention and release, "the risk of erroneous deprivation is high." *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding due process violation where Government failed to provide *pre*-deprivation process, even though Petitioner had received a belated bond hearing).

Finally, the Government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. *Salazar*, 2025 WL 3063629, at *5. Since Respondents did not engage with Petitioner's due process arguments in opposing the petition, they have not provided the Court with any information regarding the burden, if any, that additional process may place on the Government if relief is ordered. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). "If the

government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)

## IV. CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED as to Petitioner's due process claim. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. The Government shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which the Government must show by clear and convincing evidence that he is a flight risk or danger to the community.

4. This Order does not address the circumstances in which the Government may detain Petitioner in the event he becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: October 26, 2026

EDWARD J. DAVILA
United States District Judge